FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Belinda M. Ybarra,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | No.  2:15-CV-168-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

Before the Court, without oral argument, are the parties' cross-summary-judgment motions. ECF Nos. 13 & 20. Plaintiff Belinda Maria Ybarra appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 1. Ybarra contends the ALJ's conclusions are not supported by substantial evidence and that Ybarra is more limited than the ALJ determined. ECF No. 13 at 11. Specifically, Ybarra claims the ALJ (1) improperly discredited Ybarra's claimed symptoms and (2) failed to properly consider and weigh the medical opinion evidence. *Id.* Also, though not entirely clear, Ybarra seems to argue that the ALJ erred by not undertaking a drug abuse and alcoholism analysis (DAA). *Id.* at 13. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. ECF No. 20 at 2.

ORDER **-** 1

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Ybarra's motion and grants the Commissioner's motion.

**A.    Statement of Facts[1]**

Ybarra was born on September 8, 1976. Tr. at 126.[2] She was 37 at the time of her November 2013 hearing before the ALJ. Ybarra has three children, lives in Spokane, and completed school through only the ninth grade but obtained a GED. Tr. at 41-42.

Although Ybarra has worked in the past, including as a receptionist, she has not held a job for longer than a few months. Tr. at 43–45. The ALJ found her to have no relevant past work. *Id.* at 45.

Ybarra's disability report noted "bi-polar and chronic lower back pain" as the illnesses, injuries, or conditions that limit her ability to work. Tr. at 147. The record also reflects that Ybarra alleges she suffers from the following physical and mental conditions: back pain; limited ability to walk or stand; injury to her right hand which has left it weak; injury to her right shoulder; asthma; heart murmurs; alcoholism in remission; bipolar disorder, including anxiety, depression, manic episodes, and panic attacks; and difficulty sleeping. Tr. at 19; 48; 50; 122; 434; 435. Ybarra also

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

[2] Citations to "Tr." Refer to the administrative record at ECF No. 10.

ORDER **-** 2

asserts that there is no job that she could do for eight hours a day, five days a week because she becomes "overwhelmed and stressed out, and just too much for me to handle." Tr. at 55.

**B.     Procedural History**

Ybarra first applied for Supplemental Security Income (SSI) on August 17, 2009, alleging a disability onset date of November 1, 2006. Tr. at 126. Ybarra's application was initially denied, and denied again on reconsideration, leading her to request a hearing before an ALJ. Tr. at 64, 68, 71, and 77.

ALJ James Sherry conducted the hearing on September 15, 2010, and issued an unfavorable decision on November 3, 2010. Tr. at 14, 38, 109. Through counsel, Ybarra timely appealed the ALJ's decision to the Social Security Administration's (SSA) Appeal Council. Tr. at 11. On December 21, 2011 the Appeal Council denied Ybarra's request for review. Tr. at 1.

On January 10, 2012, Ybarra appealed the Appeal Council's decision to the U.S. District Court for the Eastern District of Washington. Tr. at 501–02. In that action, the parties reached an agreement, approved by Magistrate Judge Cynthia Imbrogno on September 7, 2012, to reverse the ALJ's decision and remand for further administrative proceedings. Tr. at 504. The court ordered the ALJ on remand to "further develop the record; obtain a complete copy of Dr. Pollack's report; re-

ORDER **-** 3

evaluate the report in its entirety; and evaluate Dr. Smith's physical capacity assessment." *Id.*

ALJ Sherry conducted a new hearing on November 7, 2013, pursuant to Magistrate Judge Imbrogno's order. Tr. at 450. Prior to the hearing, Ybarra amended her alleged onset date to August 5, 2009. Tr. at 434. The ALJ again issued an unfavorable decision against Ybarra on December 2, 2013. Tr. at 429. Ybarra appealed the ALJ's decision to the Appeal Council on December 20, 2013. Tr. at 426. On May 13, 2015, the Appeal Council notified Ybarra that it declined to disturb the ALJ's decision. Tr. at 422.

On July 8, 2015, Ybarra filed the instant action. ECF No. 1. Ybarra then filed a motion for summary judgment on February 16, 2016. ECF No. 13. Defendant filed a cross motion for summary judgment on May 11, 2016.

**C.     Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137, 148 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.  Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as

a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

ORDER **-** 7

**E.     Analysis**

    1.     <u>Credibility</u>

An ALJ must "make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). In making a credibility determination, ALJs undertake a two-step process. *Id.* First, a claimant must produce objective medical evidence of underlying impairments that could have reasonably produced the symptoms. *Id.* Second, if the claimant satisfies the first step and there is no affirmative evidence of malingering, the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs can consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

Here, the ALJ found Ybarra has the following severe impairments: right shoulder impingement, bipolar disorder, affective disorder, anxiety disorder, personality disorder, and substance abuse/dependence disorder. Tr. at 434–37; 439;

440. He based this determination on the objective medical evidence presented and reviewed by impartial medical experts who testified in the case. *Id.* The ALJ also concluded these impairments "could reasonably be expected to cause the alleged symptoms." Tr. at 440. This satisfies the analysis's first step.

Since Ybarra satisfied the first step, the ALJ had to offer "specific, clear and convincing reasons" for rejecting Ybarra's testimony.[3] *Tommasetti*, 533 F.3d at 1039. Here, the ALJ did not completely reject Ybarra's testimony about her symptoms; rather, he found her testimony "partially credible." Tr. at 440. Contrary to Ybarra's assertion that the "ALJ found that Ms. Ybarra's physical symptom complaints were not supported by objective evidence," the ALJ found that the severity of Ybarra's symptom allegations was "*inconsistent* with the objective evidence." ECF No. 13 at 12; Tr. at 440 (emphasis added). Moreover, while Ybarra correctly states that ALJs are prohibited from disregarding testimony solely because there is no objective medical evidence substantiating it, an ALJ can consider the lack of objective evidence as a factor in his credibility analysis. ECF No. 13 at 12; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As such, the ALJ was required to: (1) point to "specific, clear and convincing reasons" for the inconsistencies between Ybarra's symptom allegations and the objective evidence

---

[3] Neither the record nor the ALJ's decision evinces any affirmative evidence of malingering.

ORDER - 9

and (2) consider the lack of objective evidence as just one factor in making his decision. *Tommasetti*, 533 F.3d at 1039; *Burch*, 400 F.3d at 681.

Here, Ybarra testified in the November 2013 hearing that her physical ailments—particularly her ability to stand up and sit and her back pain[4]—had not improved from what she reported in her September 2010 testimony. Tr. at 482–83. She also stated that her right hand was still very weak, that she could lift no more than five or ten pounds, and that her shoulder hurt. *Id.* As to her mental health, she stated that she continued to receive counseling, her anxiety was "bad" as compared to what it was in September 2010, and she frequently suffered panic and anxiety attacks, including an episode in October 2013 resulting in a visit to Deakinus hospital. *Id.* at 484–85. Ybarra elaborated: "I just feel overwhelmed with different kinds of emotions, I feel like I'm going to cry. Sometimes I get angry. It's just like overwhelming. It's too many feelings at once." *Id.* at 485.

In finding Ybarra's symptom testimony "partially credible," the ALJ relied heavily, though not exclusively, on testimony from two impartial medical experts analyzing the objective evidence. Tr. at 440-41. In his estimation, Ybarra's testimony was inconsistent with the objective evidence as presented in the experts' testimony. *Id.* at 440. The ALJ pointed to specific inconsistencies between Ybarra's

---

[4] Ybarra testified in September 2010 that she could sit for about ten minutes, stand for about ten minutes, walk for about two blocks, climb stairs, and bend "a little bit." Tr. at 49.

testimony and the analysis provided by the medical experts.[5] For example, the ALJ mentions Dr. Lynne Jahnke's testimony stating that evidence of Ybarra's back and shoulder pain is "not viewed necessarily at a significant level." *Id.* In her view, this evidence would not prevent Ybarra from sitting, standing, or walking for up to six hours in an eight-hour workday, though Dr. Jahnke notes that it would be best for Ybarra to have a "sit/stand option at will." *Id.* at 439–40. He also noted that x-rays do not show "significant pathology." *Id*. at 440. Moreover, the ALJ considered the fact that Ybarra's physical ailments "have been treated conservatively with medication and physical therapy." *Id.* Since evidence of "conservative treatment" is enough to "discount a claimant's testimony regarding severity of an impairment," this too was proper. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

As to Ybarra's mental health issues, the ALJ found Ybarra's allegations of disabling panic attacks unsupported. Tr. at 440. In so finding, the ALJ relied on Dr. Marian Martin's testimony that Ybarra's "anxiety as reflected in the record is mostly noted in conjunction with counseling for familial matters and everyday stresses, as opposed to true psychological dysfunction." *Id.*

---

[5] Contrary to Ybarra's assertions in her reply brief, the ALJ's decision contained more than just general findings. ECF No. 21 at 2. He pointed to specific reasons why he found inconsistencies in Ybarra's symptom allegations. Indeed, since "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld, the Court can consider Ybarra's testimony that reasonably corresponds to the expert testimony the ALJ referred to in his opinion. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

The discussion above illustrates that the ALJ relied on sufficient reasons to make his credibility determination and "did not arbitrarily discredit claimant's testimony." *Tommasetti*, 533 F.3d at 1039. Yet, the ALJ did not stop there. He also noted that Ybarra's testimony about her marijuana and alcohol remission is suspect because of Dr. Martin's analysis of the medical evidence, which suggested ongoing use. *Id*. He wrote that this "calls into question" the truthfulness of Ybarra's other allegations. *Id.* Ybarra urges that there must be more than a history of substance abuse to discredit a claimant's testimony. ECF No. 13 at 13. However, "merely because one reason the ALJ gave for discounting Ybarra's credibility was not proper, does not render the ALJ's credibility determination invalid, as long as it is supported by substantial evidence in the record." *Woodsum v. Astrue*, 711 F.Supp.2d 1239, 1262 (W.D. Wash. May 7, 2010). This Court need not decide whether the ALJ's reference to Ybarra's history with drugs and alcohol was a proper factor to consider in making his credibility determination. As discussed above, the remainder of the ALJ's decision provided sufficient reasons upon which the ALJ could and did rely to properly make his credibility determination.

    2.    <u>Drug Abuse and Alcoholism Analysis (DAA)</u>

Although it is not entirely clear whether Ybarra argues that the ALJ erred by not performing a DAA, to the extent that she does, the Court holds that any such alleged error was harmless. ECF No. 13 at 13. Ybarra has not shown at least a

substantial likelihood of prejudice, rendering any alleged error harmless. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

In this case, at step two, the ALJ found that Ybarra's severe impairments included substance abuse/dependence disorder. Tr. at 434. Moreover, the ALJ did not conduct a formal DAA even though he noted Dr. Martin's conclusion that Ybarra would have been disabled since 2012 when accounting for her substance abuse/dependence disorder. Tr. at 436. However, any alleged error here was harmless because the ALJ's final residual capacity determination was supported by Dr. Martin's testimony without accounting for any drug and alcohol abuse. Tr. at 436-37; *Parra*, 481 F.3d at 747 (finding any error in not conducting a DAA harmless because the ALJ gave claimant the benefit of the doubt and considered whether abstinence would have cured his disability); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding an ALJs failure to list an impairment at step two was a harmless error because the ALJ "considered any limitation posed" by the impairment in question elsewhere in the analysis).

3. <u>Medical Opinion Evidence</u>

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Moreover, an ALJ may afford greater weight to the opinion of a non-examining expert who testifies at a hearing and is subject to cross-examination. *Id.* at 1042 (citations omitted).

Here, Ybarra challenges only the ALJs consideration of Dr. Dennis R. Pollack's opinion. ECF No. 13 at 15; ECF No. 21 at 3. She asserts that the ALJ "did not articulate the weight afforded Dr. Pollack's opinion," contrary to the Commissioner's mandates. *Id.* at 15. Ybarra claims that if "Dr. Pollack's opinion had been properly considered, [her] residual functional capacity determination would be assessed differently, affecting the ultimate determination regarding disability in this matter." *Id.* This, she states, was not a harmless error. *Id.*

Dr. Pollack's report has previously played an important role in this dispute. The case was remanded for further administrative proceedings, in part, for the ALJ to obtain a complete copy of Dr. Pollack's report and to re-evaluate it in its entirety. Tr. at 432. This report, a psychological evaluation of Ybarra from September 2010, was completed at Ybarra's counsel's request. Tr. at 437.

The record reflects that the ALJ properly considered Dr. Pollack's report and, contrary to Ybarra's assertion, afforded his opinion "little weight." *Id*. at 441. Since Dr. Pollack was at least an examining physician here, and Dr. Martin contradicted his opinion, the ALJ had to provide "specific" and "legitimate" reasons supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. However, significantly, Dr. Martin was cross-examined by Ybarra's counsel at the November 2013 hearing. Tr. 479-80. Therefore, the ALJ could afford her opinion greater weight. *Andrews*, 53 F.3d at 1042. The ALJ did precisely what was required. He provided a detailed summary of Dr. Martin's testimony, including specific reasons why Dr. Martin disagrees with Dr. Pollack's assessment, and based on that, decided to credit Dr. Martin's testimony over Dr. Pollack's report. Tr. at 436-38, 441. A complete itemization of these reasons is unnecessary here, but to illustrate, Dr. Martin testified that she disagreed with Dr. Pollack's characterization of some of Ms. Ybarra's limitations as "marked." *Id.* at 437. The record supports Dr. Martin's conclusions. *Id*. at 477–78. As such, the ALJ was within his discretion to credit Dr. Martin's opinion over Dr. Pollack's report.

**F.    Conclusion**

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that Belinda Maria Ybarra does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. **JUDGMENT** is to be entered in the Commissioner's favor.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 25th day of August 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

Q:\SMJ\Civil\2015\Ybarra v Colvin-0168\ord cross smj docx

ORDER **-** 16